UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                                              Criminal No. 11-cr-84-JL
                                                   Opinion No. 2015 DNH 094

Rafael Humberto Celaya Valenzuela

**MEMORANDUM ORDER**

    This case raises the question of whether the defendant, Rafael Humberto Celaya Valenzuela ("Celaya"), validly waived his Fifth Amendment rights, and therefore, whether his alleged inculpatory statements were admissible at trial. In moving to suppress the statements, Celaya makes two arguments. First, he argues that he was never advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1960), despite the apparent presence of his signature on a form advising him of his rights and acknowledging his waiver of them; he claims his signature was forged. Second, Celaya argues, even if the form is genuine, he did not knowingly, voluntarily, and intelligently waive his rights.

    After an evidentiary hearing, the court orally denied the motion to suppress.[1] This order serves to set forth the bases for the ruling in greater detail. See, e.g., United States v.

---

[1] Though captioned as a motion in limine, Celaya's challenge to the admissibility of his confession was, in fact, a motion to suppress, filed after the applicable deadline. See L.R. Crim. 12.1(b). The prosecution did not object to the motion as untimely, however, so the court has ignored that issue.

Joubert, 980 F.Supp.2d 53, 55 n.1 (D.N.H. 2014) (noting a district court's authority to later reduce its prior oral findings and rulings to writing), aff'd, 778 F.3d 247 (1st Cir. 2015). As fully explained infra, Part II, the evidence establishes that Celaya did, in fact, sign the Miranda waiver. This finding is supported by, inter alia, testimony of Special Agent Tucker Heap, the Federal Bureau of Investigation ("FBI") 302 Form summarizing Agent Heap's interrogation of Celaya, the waiver form itself, and Celaya's testimony. Celaya's second argument also fails. The totality of the circumstances strongly supports the finding that Celaya—an attorney who described his own treatment as "friendly"—knowingly, voluntarily, and intelligently waived his rights. Therefore, the prosecution has met its burden of proving that Celaya's alleged statements to law enforcement personnel on August 7, 2012 were lawfully obtained.

## I.  **Applicable Legal Standard**

Under Miranda, law enforcement personnel must employ certain warnings to suspects before subjecting them to "custodial interrogation" in order to protect their Fifth Amendment privilege against self-incrimination. United States v. Jackson, 544 F.3d 351, 356 (1st Cir. 2008); see also U.S. Const. amend. V. ("No person . . . shall be compelled in any criminal case to be a witness against himself."). "Any statements obtained as a result

of custodial interrogation in the absence of Miranda warnings must be suppressed." Jackson, 544 F.3d at 356. The prosecution bears the burden of proving by a preponderance of the evidence that the suspect was given Miranda warnings and validly waived his rights. Miranda, 384 U.S. at 475; U.S. v. Rojas-Tapia, 446 F.3d 1, 4 (1st Cir. 2006).

## II. Background

The court makes the following findings of fact on testimony and other evidence received at the suppression hearing.

On August 7, 2012, around 1:30 p.m., Spanish authorities arrested Celaya based on warrants issued by this Court in connection with indictments charging him, and others, with conspiracy to distribute, and to possesses with intent to distribute, a quantity of illicit drugs, including cocaine. Several hours later, sometime between 5:30 p.m. and 6:30 p.m., FBI Agents Heap and Foley and Boston Police Detective Juan Seoane arrived at the AC Hotel Cuzco in Madrid, Spain to interview Celaya in his hotel room, where he was being held. When the agents arrived, Celaya was sitting on the couch dressed in slacks and a collared shirt, and his hands were handcuffed in front of his body. Agent Heap sat beside Celaya on the couch, Detective Seoane sat across from Celaya on a chair, and Agent Foley sat behind everyone on the bed.

Agent Heap explained "why [they] were there" and "what [they] were doing," i.e., they had been investigating Celaya and his associates for drug trafficking. Agent Heap then asked Celaya if he preferred to converse in English or Spanish, and after electing Spanish, Celaya received a Spanish-language version of the form containing Miranda warnings.[2] This conversation occurred "before [they] asked [Celaya] any question[s]." Aware that Celaya had been educated as a lawyer, Agent Heap asked Celaya if he understood the form. Celaya stated that he did and signed it in the agents' presence, indicating that he understood his rights but was waiving them. Agent Heap also testified that, to avoid creating any confusion, he let the form serve as the sole explanation of Celaya's rights. Neither Agent Heap nor other agents verbalized any Miranda warnings. Shortly thereafter, Agent Heap and Detective Seoane signed the form as witnesses. Questions and answers ensued. Celaya never asked for a lawyer or to terminate the interview. In his testimony at the suppression hearing, Celaya described his treatment by Special Agent Heap as if "he were a friend." Upon completion of the interview, lasting less than an hour,[3] Agent

---

[2] While Celaya denied receiving the form, he does not contest the translation or content of the warnings contained on the form.

[3] The prosecution says the interview lasted about 45 minutes, while Valenzuela says it lasted between ten and fifteen minutes.

Heap summarized the interview on a 302 Form, which included a statement that "Celaya waived his rights."

Roughly three months later, in November of 2012, Celaya, then incarcerated in the United States, mailed Agent Heap two handwritten letters. The first letter asked Agent Heap to visit Celaya in prison without any attorneys to discuss something "very important," but did not provide any more details. The second letter explicitly asked Agent Heap to strike a deal with Celaya in exchange for cooperating with the prosecution in this case and another. In the letter, Celaya refers to Agent Heap as a "friend" and someone that inspires "confidence" in him, and that he hopes they "can be a great team."

**III. Analysis**

Celaya makes two arguments: (1) claiming his signature on the form was forged, that he was never given his Miranda warnings and (2) regardless, he did not knowingly, voluntarily, and intelligently waive his rights. For the reasons stated infra, the prosecution has met its burden of proving that Celaya's statements were lawfully obtained.

    **A.   Allegedly forged Miranda warning form**

Celaya first argues that, while the signature on the Miranda waiver "looks like" his, it was in fact forged, and he has never

before seen the document--which, on the prosecution's own account, was the sole means by which Celaya was given his Miranda warnings.

    Celaya's sole evidence supporting his theory is his own testimony that he never received the form.  While Celaya's attorney cautiously began the examination of her client by asking if Celaya "remember[ed] ever seeing" the form,[4] Celaya testified, definitively, that he never received it.  The court did not find Celaya to be a credible witness, particularly on this point.  His delivery, demeanor, and tone were calculated and calm, as if he were advocating a position or argument rather than merely reporting recollected facts.  Furthermore, Celaya offered no other testimony in support of his forgery claim--including by a witness familiar with his handwriting or a handwriting expert.  See Fed. R. Evid. 901(b)(2)-(3).  Indeed, as noted at the outset, Celaya admitted that the signature on the form "look[ed] like" his signature.

    The prosecution's evidence, on the other hand, is extensive.  Agent Heap testified both by affidavit and live at the hearing, clearly stating in detail that Celaya had read and signed the Spanish-language Miranda waiver form in Agent Heap's presence.  The FBI 302

---

    [4] This question was consistent with counsel's pre-hearing proffer that Celaya would testify to not remembering having seen the form.

Form, setting forth a more contemporaneous account of that exchange (which was entered into evidence at the hearing) provides further corroboration, clearly stating Celaya was advised of and waived his rights.  Also contemporaneously, Detective Seoane and Agent Heap also signed the Miranda waiver as witnesses.  Last, there is no apparent reason why the agents would forge Celaya's signature, at least while not doing the same for another defendant in this case who refused to sign such a form.[5]

Based on this evidence, and the lack of any credible contradictory evidence from Celaya, the prosecution has carried its burden to prove by a preponderance of evidence that Celaya was given Miranda warnings before he made the incriminating statements.

**B.   Knowing, voluntary, and intelligent waiver**

Celaya also argues that he did not knowingly, voluntarily, and intelligently waive his Fifth Amendment rights against self-incrimination.  After receiving Miranda warnings, an accused may waive his rights "provided the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444.  To show

---

[5]On the same day as Celaya's interview, the agents interviewed Celaya's accused co-conspirators, Jesus Manuel Gutierrez Guzman and Samuel Zazueta Valenzuela, regarding the same matters.  While Guzman signed the Miranda waiver, Zazueta Valenzuela did not, and, in addition to leaving the signature line blank, the agents wrote "did not sign."

7

a valid Miranda waiver, the prosecution proves by a preponderance of the evidence that the "totality of the circumstances surrounding the interrogation reveal [sic] both an uncoerced choice and the requisite level of comprehension." Moran v. Burbine, 475 U.S. 412, 421 (1986); Rojas-Tapia, 446 F.3d at 4. Courts consider several factors under the totality of the circumstances test, including, inter alia:  (1) the intelligence of the accused; (2) the age of the accused; (3) his familiarity with criminal justice system; (4) the physical and mental condition of the accused; (5) any drug or alcohol influence; (6) the explicitness of the waiver; and (7) the time lapse between the waiver and the statements made.  See Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) (using, inter alia, intelligence, age, and various physical conditions resulting from officer treatment as factors); Colorado v. Connelly, 479 U.S. 157, 165 (1986) (discussing drug influence); Michigan v. Mosley, 423 U.S. 96, 102–03 (1975) (discussing time lapse between waiver and statements made); U.S. v. Rosario-Diaz, 202 F.3d 54, 69 (1st Cir. 2000) (discussing prior involvement with the criminal justice system); see also Correll v. Thompson, 63 F.3d 1279, 1288 (4th 1995) ("[T]he totality of the circumstances . . . include the suspect's intelligence and education, age and familiarity with the criminal justice system, and the proximity of the waiver

to the giving of the Miranda warnings.") (quotations and brackets omitted).  Consideration of these factors, insofar as they come into play here, readily leads to the conclusion that Celaya's waiver of his rights was knowing, voluntary, and intelligent.

### 1. Intelligence, age, and familiarity with the criminal justice system

Celaya understood his actions and their consequences.  He is a middle-aged adult who has attended primary school, secondary school, college, and taken post-college studies in law and foreign commerce.  He is "trained as a lawyer," and he has practiced civil law.  Although he has never practiced criminal law, he has had some exposure to it in his studies.  Furthermore, on two separate occasions, following his arrest, Celaya wrote to law enforcement agents attempting to negotiate a deal in exchange for information.  This required at least some understanding of our criminal justice system.[6]  Celaya stated he speaks "65, 75 percent" English, and his native language is Spanish.  However, Celaya elected to conduct the interview in Spanish, and to receive the Miranda waiver in Spanish.

---

[6] Celaya's attorney also seemed to suggest at the hearing that he was confused whether his charges were Spanish or American and also that he was fearful because he had never been arrested before.  However, the evidence did not support these assertions and, and even true, they would have little if any impact on the validity of his waiver.

9

### 2.  Physical and mental condition and drug or alcohol influence

Celaya's will was not overborne. The agents interviewed Celaya in his hotel room for under an hour while he sat on the couch. Although Celaya was handcuffed, he testified that Agent Heap treated him as if "he were a friend." Celaya also wrote letters to Agent Heap from prison, describing him as a "friend," and someone that inspires "confidence" in him. There is no evidence that the other agents treated Celaya any differently. While Spanish authorities detained Celaya several hours prior to the agents' interview, there was no evidence that Celaya was subjected to any sort of undue pressure or coercion. Also, there is no evidence Celaya was under the influence of any drugs or alcohol.

### 3.  The explicitness of the waiver and the time lapse

The form Celaya was given explicitly enumerated his rights, and his statements to the agents directly followed his receipt of the form. At no point did he ask to terminate the interview. Celaya read the [Miranda](#) waiver in his native language, and he indicated he understood it orally and by signature. Based on this evidence, the prosecution has sustained its burden to show by a preponderance of evidence that Celaya validly waived his Fifth Amendment rights against self-incrimination.

**IV. Conclusion**

For the foregoing reasons, Celaya's motion to suppress[7] is DENIED.

**SO ORDERED.**

                                        _/s/ Joe Laplante_
                                        Joseph N. Laplante
                                        United States District Judge

Dated: May 11, 2015

cc: Donald A. Feith, AUSA
     Andrew S. Feldman, Esq.
     Jeffrey E. Feiler, Esq.
     Julie K. Connolly, Esq.

---

[7] Document no. 160.