```
                UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE
```

United States of America

           v.                        Criminal No. 11-cr-084-04-JL
                                        Opinion No. 2015 DNH 226P

Rafael Humberto Celaya Valenzuela

**ORDER**

Before the court is defendant Rafael Humberto Celaya Valenzuela's ("Celaya") post-verdict motion for reconsideration of this court's denial of his motion for judgment of acquittal. Fed. R. Crim. P. 29. Celaya's motion implicates two issues: 1) whether the motion is properly before the court; and 2) if so, the evidentiary requirements to prove a drug conspiracy under 21 U.S.C. § 846.

In July 2012, a superseding indictment charged Celaya and several others with conspiracy to distribute and possess with intent to distribute cocaine, heroin and methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a). His trial began in October 2014. After the government rested its case Celaya filed a motion for acquittal, pursuant to Fed. R. Crim. P. 29(a). This court denied the motion. Celaya was subsequently convicted.

In April 2015, on the eve of sentencing that had been twice continued, Celaya filed a motion for reconsideration of the

acquittal motion, to which the prosecution objected. After a conference with the court, and adhering to an agreed-upon briefing schedule, each side filed supplemental memoranda. Upon review of the motion for reconsideration, objection thereto and supplementation, and after oral argument, the motion is denied both procedurally, and in the alternative, in substance.

## I. Procedural History

Celaya's mid-trial motion for acquittal under Rule 29 posited two bases for acquittal. First, he asserted that the prosecution failed to prove that Celaya joined the conspiracy alleged in the operative indictment. Specifically, Celaya argued that:

> While there was substantial evidence introduced by the Government that could reasonably be understood by the jury to show that the Sinaloan cartel wanted to expand its drug trafficking network into Europe, and perhaps the United States, *the evidence failed to demonstrate that the cartel actually agreed to include Celaya in that conspiracy. To the contrary, the evidence clearly shows that the cartel considered, and then rejected, the idea of having Celaya participate in whatever conspiracy it wanted to create.*

(Doc. no. 185)(emphasis added). Celaya also argued that the District of New Hampshire was not a permissible venue for his trial. The court denied the motion by oral order.

After being granted a pair of sentencing continuances, Celaya filed, roughly a week before his sentencing hearing was

scheduled, a motion for reconsideration of the Rule 29 motion the court denied approximately six months earlier.  In addition to reiterating the previously rejected venue argument, Celaya asserted for the first time that the conspiracy that formed the basis of his conviction had no nexus to the United States, and therefore the government could not prosecute him within the bounds of due process.  The prosecution objected, first arguing that the motion was barred because it was, in effect, an untimely filed motion for acquittal.  See Fed. R. Crim. P. 29(c)(1) ("A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.").  The government further argued that Celaya failed to satisfy the requirements of a valid motion for reconsideration because he was merely raising arguments that could have been presented in his original motion.  Finally, the government asserted that Celaya's nexus and venue arguments fail substantively.

After a conference with the court, transcripts were made available to the parties, who agreed on a schedule to supplement their submissions.

**II.  <u>Analysis</u>**

In addressing a motion for judgment of acquittal under Rule 29(c), the court must determine whether, "after assaying all the

evidence in the light most amiable to the government, and taking all reasonable inferences in its favor, a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime." United States v. Thomas, 467 F.3d 49, 53 (1st Cir. 2006) (quoting United States v. Carucci, 364 F.3d 339, 343 (1st Cir. 2004)). Because it is the jury's responsibility to assess the credibility of witnesses, "[c]redibility issues must be resolved in favor of the verdict." United States v. Pérez-Ruiz, 353 F.3d 1, 7 (1st Cir. 2003) (citing United States v. Alicea, 205 F.3d 480, 483 (1st Cir. 2000)). Although the prosecution has the burden of proof at trial, on a Rule 29 motion, the defendant "bear[s] the heavy burden of demonstrating that no reasonable jury could have found [him] guilty beyond a reasonable doubt." United States v. Munoz, 36 F.3d 1229, 1234 (1st Cir. 1994) (citing United States v. Innamorati, 996 F.2d 456, 459 (1st Cir. 1993)).

Before turning to the motion at issue, the court notes that it initially discounted the prosecution's timeliness argument because it viewed Celaya's motion as one challenging the court's jurisdiction to hear the case, a matter which can be raised at any time. However, as the government correctly points out, Celaya's nexus argument goes to the merits of the prosecution, not the jurisdiction of the court to hear the case. See United

States v. Yousef, 750 F.3d 254, 259-60 (2d Cir. 2014) (citing Morrison v. Nat'l Australia Bank Ltd., 561 U.S. 247, 253-54 (2010)).  Celaya concedes this point in his reply brief.  Doc. no. 265 at 3.  Accordingly, the court first addresses the procedural issues.

A. Procedural compliance

1. Nexus to the United States

Celaya is correct that the strict time limits of Rule 29 do not apply to his motion to reconsider.  While the First Circuit Court of Appeals has recognized that motions for reconsideration in criminal cases "are not specifically authorized by statute or rule,"[1] their putative viability relies on the "traditional and virtually unquestioned practice of district courts exercising their inherent authority to revisit their own orders."  United States v. Ortiz, 741 F.3d 288, 293 n.2 (1st Cir. 2014) (quoting United States v. Dieter, 429 U.S. 6, 8 N.3 (1976) (per curiam) (citation omitted) (internal quotation marks omitted).  This court's authority is not unbounded, however.  Reconsideration is "an extraordinary remedy which must be used sparingly."  Palmer v. Champion Mtg., 465 F.3d 24, 30 (1st Cir. 2006) (quoting 11 Charles Alan Wright et al., 11 Federal Practice and Procedure

---

[1]But see LR 7.2; LCrR 1.1(d).

§ 2810.1 (2d ed. 1995)).  It is "appropriate only in a limited number of circumstances:  if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust."  United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009).  Moreover, and especially relevant here, reconsideration is not "a vehicle for a party to undo its own procedural failures [or] allow a party to advance arguments that could and should have been presented to the district court prior to judgment."  Id.  (quoting Iverson v. City of Boston, 452 F.3d 94, 104 (1st Cir. 2006)).  This final caveat is Celaya's undoing.

In his motion for acquittal, Celaya explicitly argued that the evidence was insufficient to tie him to a conspiracy "to expand its drug trafficking network into Europe, and perhaps the United States," even though the jury could reasonably conclude that such a conspiracy existed.  (Doc. no. 185).  By contrast, Celaya's motion for reconsideration all but abandons this tack and argues that the conspiracy itself did not involve drug distribution in the United States.  Therefore, the argument goes, Celaya must be acquitted because the statutes of conviction do not reach extraterritorial conduct.

In an effort to satisfy the Court of Appeals's "manifest error of law" standard, Celaya argues that this court did not consider "controlling law . . . that section 841(a) does not apply to the distribution of, or the possession of with intent to distribute, controlled substances outside the borders of the United States." (Doc. no. 226-1 at 3). However, Celaya <u>did not make this argument</u> in his motion for judgment of acquittal. Indeed, in the sentence <u>immediately preceding</u> the one quoted above, Celaya notes that in his original motion he "argued that the evidence was insufficient to prove beyond a reasonable doubt that <u>he</u> participated in the conspiracy charged in the indictment, which was to distribute or possess with intent to distribute heroin, methamphetamine and cocaine within the United States." (Emphasis added).

Ultimately, Celaya's submission relative to the sufficiency of the evidence "is a series of arguments that could and should have been previously presented to the district court." United States v. Iaconi, 667 F. Supp. 2d 215, 217 (D. Mass. 2009) (citing Allen, 573 F.3d at 53). To the extent the motion attacks the "jurisdictional nexus" of the conspiracy to the United States, it is therefore denied.

2. Venue

Although Celaya argued that venue in New Hampshire was improper in both his original Rule 29 motion and his motion for reconsideration, he did not raise this challenge prior to trial, as required by Fed. R. Crim. P. 12(3)(A)(I). Under the version of the Federal Rules applicable at the time, such a failure constitutes a waiver. See Fed. R. Crim. P. 12(e) (2014 ed.; repealed Dec. 1, 2014); United States v. Lyons, 740 F.3d 702, 730 (1st Cir. 2014). While the current version of the Rules simply refers to such motions as "untimely," Fed. R. Crim. P. 12(c)(3), both provisions allow the court to consider the motion for "good cause," a factor Celaya has not addressed. Against this backdrop, the court will not consider the venue argument.

B. Substance of Celaya's Arguments

Although the court finds that Celaya's motion for reconsideration is procedurally barred, the court has also considered the parties' submissions with respect to the substance of his arguments. Assuming that Celaya's most recent plaint is operative – that the conspiracy of which Celaya was convicted did not have a nexus to the United States – the court finds sufficient contrary evidence to support the jury's verdict. The court first observes that Celaya himself, in his original Rule 29 motion, conceded that a jury could find that the conspiracy

included drug trafficking "perhaps into the United States." (Doc. no. 185 at 3). Beyond that, however, the jurisdictional nexus argument fails on the merits.

To begin with, Celaya grossly overstates the reach of cases upon which he relies. He cites United States v. Hayes, 653 F.2d 8 (1st Cir. 1981), for the proposition that the government must prove that the intent of the conspiracy must be to distribute controlled substances in the United States. But the holding in Hayes, a case involving a drug-carrying vessel seized in international waters, is not nearly so broad. By its own terms, Hayes limited the "intent to distribute in the United States" requirement to vessels on the high seas. Id. at 15. Celaya further relies on United States v. Bravo, 489 F.3d 1 (1st Cir. 2007)[2] for having restated the proposition allegedly set out in Hayes. Celaya correctly observes that Bravo did recognize that Hayes found a "jurisdictional nexus requirement" for the application of the predecessor to the Controlled Substances Act. Id. at 7 (Doc. no. 262 at 9 n.4). However, Celaya truncated the Bravo court's recognition that Hayes's nexus finding applied to a "vessel apprehended in international waters." Id.

---

[2]In fact Celaya cited to a version of Bravo that was withdrawn and superseded. 480 F.3d 88. The cited portion of the withdrawn case was unchanged, however.

In contrast to Celaya's incomplete representation, Hayes specifically recognized that "[t]he Ninth Circuit had held in a case where possession of the drug was in the United States that it was immaterial whether the offender intended to distribute it elsewhere."  653 F.2d at 16 n.7.  Hayes also reiterated the First Circuit Court of Appeals's limiting principle: "This may well be so, but we think that where possession occurs on the high seas, an intent to distribute in the United States is required."  Id. (emphasis added).  The Court of Appeals put this issue to rest in United States v. McKenzie, 818 F.2d 115 (1st Cir. 1987), in which it reviewed a conviction for violating section 841(a)(1), where the conviction "requir[ed] proof of possession with intent to distribute."  Id. at 118.  Although the court noted that "appellant did not, apparently, intend to distribute the narcotics in the United States," the court concluded that "the place of intended distribution is not important so long as such intent is established together with the fact of possession within the United States."  Id. (citing United States v. Gomez-Tostado, 597 F.2d 170 (9th Cir. 1979)); see also United States v. Muench, 694 F.2d 28 (2d Cir. 1982) (applying statute to airplane passengers carrying drugs en route from Colombia to West Germany with scheduled stopover in United States but plans to distribute the drugs in West Germany).

Here, the government has provided evidence – in the form of conversations between conspirators and law enforcement agents -- of plans to use United States ports as part of the drug distribution scheme.  Such evidence is sufficient to demonstrate that the conspiracy included possession of controlled substances in the United States.  The prosecution further argues that while the seized multi-kilo cocaine shipment originated in South America and terminated in Europe, the objective of the conspiracy was to ship multiple loads over an extended period of time, with multiple distribution destinations that included the United States.  (TR 10/8/14 AM 14-15, 16, 24-25, 28-29, 38; TR 10/8/14 PM 47; Govt's Exh. 24 (code sheet); Govt's Exh 21, p. 87; TR 10/9/14 PM 76-86; TR 10/9/14 AM 41, 42, 43, 47-48, 50-54, 56, 62-63, 65-66, 89-90; Govt' Exh. 19, 32, 33, 48).  But even accepting Celaya's disputed premise that the ultimate object of the conspiracy was solely to distribute controlled substances abroad, the agreement to use United States ports is sufficient to support the conspiracy conviction.  While Celaya claims that various conversations were only preliminary discussions in which he was explaining to co-conspirators what an undercover agent had represented to him about United States ports, the jury could have concluded that a conversation, for example, in which Celaya said, <u>inter alia</u>, "we prefer the port which is safest for you" (that


is, undercover personnel posing whom he believed were drug distributors), was indicative of an agreement that, at the very least, contemplated the potential routing of cocaine through United States ports.[3]

Against this legal and factual backdrop, even if the court were to entertain the substance of Celaya's motion to reconsider, it would find that its original decision was neither based on a manifest error of law nor was clearly unjust.

### III. Conclusion

Defendant's motion for reconsideration[4] is DENIED.

**SO ORDERED.**

/s/ Joe Laplante
Joseph N. Laplante
United States District Judge

Dated: December 9, 2015
cc:  Donald A. Feith, AUSA
     Andrew S. Feldman, Esq.
     Jeffrey E. Feiler, Esq.
     Julie K. Connolly, Esq.

---

[3] Celaya's claim that conversations with law enforcement personnel about the use of United States ports cannot form the basis of the conviction is unavailing. While the existence of a conspiracy must involve more than just one individual and a government agent, United States v. Portela, 167 F.3d 687, 700 (1st Cir. 1999), here the government produced evidence that there were conspirators other than law enforcement. That the agents proposed the use of United States ports does not undermine the conviction. See United States v. Giry, 818 F.2d 120, 128-130 (1st Cir. 1987) (affirming drug conspiracy conviction where conspiracy members agreed with agents' drug distribution plans).

[4] Doc. no. 226.